UNITED STATES of America

v.

David A. WILEY, Appellant
(two cases).

Nos. 74–1471, 74–2119.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 20, 1975.

Decided Aug. 22, 1975.

Lois J. Schiffer, Washington, D. C., with whom Joseph N. Onek, Washington, D. C. (both appointed by this Court), was on the brief for appellant.

Gerard F. Treanor, Jr., Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, James F. McMul-

lin, Peter C. Schaumber and Garey G. Stark, Asst. U. S. Attys., were on the brief for appellee.

Before TAMM, LEVENTHAL and ROBINSON, *Circuit Judges.*

Opinion for the Court filed by *Circuit Judge* LEVENTHAL.

Dissenting statement filed by *Circuit Judge* TAMM.

LEVENTHAL, *Circuit Judge:*

This appeal from a carnal knowledge conviction presents the question whether a retrial should be permitted when a previous conviction was reversed for error in denying a motion for judgment of acquittal.

An alleged assault on twelve-year-old Maxine Lewis resulted in a trial of appellant David A. Wiley and conviction on the count charging carnal knowledge, in violation of 22 D.C.Code § 2801 (1973).[1] On appeal, this court held that there was insufficient corroboration of the *corpus delicti.*[2] This court reversed the conviction, without either directing the District Court to dismiss the indictment or authorizing it to retry Wiley. In an effort to avoid retrial, appellant both petitioned this court to clarify its mandate and filed a motion to. dismiss the indictment in the District Court.[3] Both of these motions were denied and Wiley was retried and again convicted of carnal knowledge.[4]

---

1. Appellant was sentenced to a term of four to twelve years.

2. United States v. Wiley, 160 U.S.App.D.C. 281, 492 F.2d 547 (1973). (Wiley I).

3. These motions were filed on January 31, 1974. This court denied the motion to clarify the mandate on February 19 and the District Court denied the motion to dismiss the indictment on February 28.

4. Appellant was again sentenced to four to twelve years imprisonment.

The Government did not seek to reindict the defendant on the lesser offense of taking indecent liberties, 22 D.C.Code § 3501(a) (1973). In *Wiley I, supra* note 2, the court had said that certain facts—that complainant was crying and upset, with clothing disturbed, without

a coat even on a cold day, and making a prompt report—"may corroborate the occurrence of some event, it does not corroborate sexual intercourse." 160 U.S.App.D.C. at 285, 492 F.2d at 551. *Compare* Allison v. United States, 133 U.S.App.D.C. 159, 164–65, 409 F.2d 445, 450–51 (1969). If the Government had sought indictment of the lesser offense, the court would have been confronted with the consequence of the action of the trial court at the first trial in dismissing such a count on the ground that Wiley was guilty of carnal knowledge or not guilty at all. (Tr. 60). We are not now called upon to decide whether this action of the trial judge was proper. There is no contention by the prosecution as of this time that the case should be disposed of on this lesser charge.

With several important exceptions noted in the margin, the evidence introduced at the second trial closely paralleled that described in Judge Wisdom's opinion reversing appellant's first conviction.[5] We shall refer to those matters pertinent to present issues at appropriate points in this opinion.

Appellant's primary contention is that he should not have been subjected to a second trial. He also claims violation of his constitutional rights—to a speedy trial, to effective assistance of counsel. Finally, he protests the failure to instruct the jury on the issue of identification.

■ We hold that only in a narrow set of circumstances are retrials permitted in the interest of justice following reversals based on the insufficiency of the evidence to withstand the defendant's motion for judgment of acquittal. After a careful review of the record, we find that appellant's conviction must be *reversed* and remanded for entry of a judgment of acquittal because the insufficiency of the evidence at the first trial was attributable to the prosecution and the case does not present a justification for a second trial, such as may be found in situations of manifest necessity.

### I. Prior Panel Opinion

This court's prior decision is not determinative of the retrial question posed by this appeal. The previous panel's conclusion that it "need not consider" appellant's speedy trial claim in view of its reversal for insufficient corroboration[6] might suggest that no retrial was contemplated. But its denial of appellant's motion to clarify the mandate so as to preclude retrial leaves its intention open to speculation. The court may have regarded the speedy trial question as difficult and perhaps unnecessary to decide, since the Government might not have sought a retrial.

### II. General Rule Against Retrials Following Reversals for Insufficiency of the Evidence

A fundamental principle of American jurisprudence assures an accused that he will not be subject to a second trial on a criminal charge. The rule is subject to exceptions. We shall sketch the contours of the doctrine, including the exceptions, before considering how they apply to the case at bar.

### A.

■ The doctrine against retrials is the core of the Double Jeopardy Clause of the Constitution.[7] This guarantee was as recently as forty years ago believed to be applicable only to the Federal Government, and in Justice *Cardozo's* words to be outside the requirements of "ordered liberty" fully applicable to the

---

**5.** *See* 160 U.S.App.D.C. at 282–84, 492 F.2d at 548–50.

At the second trial, the Government called the examining physician and a pathologist who established that a vaginal smear taken from the complainant shortly after the assault contained intact sperm. An FBI report was also introduced which revealed that semen stains had been found on complainant's clothing and the sheets but that there were no stains on appellant's shirt or transfers of clothing fibers or hair samples between appellant and the complainant. In addition to the officers testifying at the first trial, the Government called two other officers who responded to Ms. Lewis's telephone call reporting the attack.

The defendant did not take the stand at the second trial. Delores Smith, who was unavailable at the first trial, was called by the defense and testified that Wiley was asleep while Cunningham was in the other bedroom with Ms. Lewis and that Wiley woke up, went to the other room, said something to Cunningham, and came right back out of the bedroom. The prosecution attempted to impeach her testimony on cross-examination through use of statements she made to the police approximately a week after the incident.

**6.** 160 U.S.App.D.C. at 286, 492 F.2d at 552.

**7.** *See, e.g.,* Breed v. Jones, 421 U.S. 519, 530–534, 95 S.Ct. 1779, 1787–91, 44 L.Ed.2d 346 (1975); United States v. Jenkins, 420 U.S. 358, 365, 95 S.Ct. 1006, 1011, 43 L.Ed.2d 250 (1975); United States v. Wilson, 420 U.S. 332, 340–343, 95 S.Ct. 1013, 1021–22, 43 L.Ed.2d 232 (1975); United States v. Jorn, 400 U.S. 470, 479, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion of Harlan, J.); North Carolina v. Pearce, 395 U.S. 711, 717–18, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); Green v. United States, 355 U.S. 184, 187–188, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

states.[8] But the last four decades have witnessed a reappraisal of that view. Today it is not only clear that the Double Jeopardy Clause is fully applicable to the states,[9] but it is also apparent that there has been a strong judicial commitment to fundamental protection against multiple trials guaranteed by the Clause.[10]

■ The courts have made it clear that the prosecution must proceed not only reasonably but with diligence. A prosecutor who announces ready for trial and has a jury sworn cannot gain another jury and a second trial because of the absence of a material witness, no matter how reasonable his belief that the witness was available and at hand.[11] The balance is struck to give dominant weight to the interest of the accused in having his trial before the duly selected jury without being subject to overhanging burdens of delay and doubt.[12] In the words of Justice Black:

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing

the possibility that even though innocent he may be found guilty.[13]

## B.

We turn to an examination of the exceptions to the constitutional prohibition against multiple prosecutions mindful of the Supreme Court's recent declaration that the policy is "so important that exceptions to the principle have been only grudgingly allowed." [14]

■ The most significant of these grudging exceptions permits the prosecution to retry a defendant who has obtained a reversal of his conviction, even though the ground of reversal is the error of the trial judge or the misconduct of the prosecutor. The theory underlying this exception has been the subject of judicial and academic discussion. At one time Justice Holmes advanced the theory of "continuing jeopardy"—that the trial, appeal, and retrial eventuating in a final acquittal or conviction were all part of one jeopardy.[15] That doctrine, more a conclusion than an analysis, was expressed in a dissent and has "never been adopted by a majority" of the Supreme Court.[16] A second approach, embraced in early Supreme Court decisions, posited that the accused "waived" his double jeopardy rights by

---

8. Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288 (1937).

9. *See* Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) (holding the Double Jeopardy Clause applicable to the states through the Due Process Clause of the Fourteenth Amendment).

10. *See* cases cited note 7 *supra.*

11. *See* Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963).

12. *See* United States v. Jorn, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971) ("The Fifth Amendment's prohibition against placing a defendant 'twice in jeopardy' represents a constitutional policy of finality for the defendant's benefit in federal criminal proceedings.").

13. Green v. United States, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957).

14. United States v. Wilson, 420 U.S. 332, 343 95 S.Ct. 1013, 1022, 43 L.Ed.2d 232 (1975).

15. Kepner v. United States, 195 U.S. 100, 134, 24 S.Ct. 797, 49 L.Ed. 114 (1904). Justice Holmes' approach is antithetical to the policy against multiple prosecutions for it would allow repeated retrials prior to a final acquittal or conviction.

16. United States v. Jenkins, 420 U.S. 358, 369, 95 S.Ct. 1006, 1013, 43 L.Ed.2d 250 (1975). It has been rejected in several opinions handed down this past Term. *See* Breed v. Jones, 421 U.S. 519, 532–534, 95 S.Ct. 1779, 1787, 44 L.Ed.2d 346 (1975); United States v. Jenkins, *supra*; United States v. Wilson, 420 U.S. 332, 351–352, 95 S.Ct. 1013, 1026, 43 L.Ed.2d 232 (1975).

taking an appeal.[17] A similar waiver argument was dismissed as "wholly fictional" by the Court in its double jeopardy decision of Green v. United States.[18] A defendant's attempt to obtain from an appellate court the acquittal which should have been entered by the trial judge cannot fairly or logically be deemed a relinquishment of double jeopardy protection or a consent to retrial.[19]

In United States v. Tateo, the Court receded from the continuing jeopardy and waiver conceptualizations and adopted a theory rooted in a fair accommodation of the interests of the Government and the defendant.[20] That fairness approach, formulated by Justice Harlan, has recently been identified by the Court as "the practical justification for the exception" to the Double Jeopardy Clause in cases involving appellate reversals of criminal convictions.[21]

However the applicability of the *Tateo* approach to appellate reversals for insufficient evidence is in some doubt by reason of the Supreme Court rulings prior to *Tateo* which seem to have focused on a waiver-type approach, indicating that the Double Jeopardy Clause prevents retrials in insufficiency cases in general, but permits such retrial where the accused has waived the constitutional guarantee by moving for a new trial.[22]

---

**17.** The Supreme Court first ruled that retrials following appellate reversals of criminal convictions did not violate the Double Jeopardy Clause in United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). The waiver theory adopted in *Ball* was extended in Bryan v. United States, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335 (1950), to appellate reversals for insufficient evidence. In a cryptic final paragraph addressed to the double jeopardy issue the Court in *Bryan* stated that "where the accused successfully seeks review of a conviction, there is no double jeopardy upon a new trial." *Id.* at 560, 70 S.Ct. at 321, *quoting* State of Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 462, 67 S.Ct. 374, 91 L.Ed. 422 (1947). *Bryan* thus treated reversals for insufficient evidence as identical to the reversal for a defective indictment in *Ball*.

**18.** 355 U.S. 184, 192, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). There the Court found that a defendant convicted of a serious crime "has no meaningful choice" but to appeal his conviction. Such an appeal cannot properly be termed a voluntary relinquishment of the defendant's constitutional protection against double jeopardy. *See* Thompson, *Reversals for Insufficient Evidence: The Emerging Doctrine of Appellate Acquittal,* 8 Ind.L.Rev. 497, 515–17 (1975) (discussing applicability of *Green* to reversals for insufficient evidence and attacking the waiver theory).

**19.** It can be argued that an accused waives his double jeopardy defense by bringing an appeal that in essence calls for a second trial free from the prejudicial errors that tainted the first conviction, but that argument would have no force in cases of reversals for insufficient evidence. In the latter class of cases, the relief commensurate with the ground advanced on appeal is acquittal not a trial free from error.

**20.** 377 U.S. 463, 465–66, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964). The Court reasoned:

While different theories have been advanced to support the permissibility of retrial, of greater importance than the conceptual abstractions employed to explain the *Ball* principle are the implications of that principle for the sound administration of justice. Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest.

**21.** *See* Breed v. Jones, 421 U.S. 519, 534, 95 S.Ct. 1779, 1788, 44 L.Ed.2d 346 (1975); United States v. Wilson, 420 U.S. 332, 343 n.11, 95 S.Ct. 1013, 1022 n.11, 43 L.Ed.2d 232 n.11 (1975).

**22.** In Sapir v. United States, 348 U.S. 373, 75 S.Ct. 422, 99 L.Ed. 426 (1955), the Court vacated a judgment of the Tenth Circuit permitting a new trial following a reversal for insufficient evidence and reinstated an earlier judgment of that court which had instructed the trial court to dismiss the indictment. The Court's terse order did not explain the rationale underlying its action. Justice Douglas's concurring opinion set forth his view that the double jeopardy

Two circuits have read the admittedly confusing state of the law created by the Court's decisions to make the permissibility of retrial depend on whether defendant moved for a new trial.[23] As a matter of jurisprudence, neither the fairness rationale nor the new trial waiver approach appear to provide a sound basis for subjecting defendants, who were wrongfully denied a judgment of acquittal by the District Court, to a new trial.[24] However, in the absence of clear indications that this prior precedent has been undermined and that a change is fore-

clause prevented a retrial "when the appellate court orders a judgment of acquittal for lack of evidence" and distinguished *Bryan* on the ground that there the petitioner's request for a new trial brought "different considerations . . . into play" and opened "the whole record for such disposition as might be just." *Id.* at 374, 75 S.Ct. at 423. Subsequently, in Forman v. United States, the Court explained that "[u]nder 28 U.S.C. § 2106, the Court of Appeals has full power to go beyond the particular relief sought" in a case reversed on grounds of an improper instruction, but suggested that it did not have similar discretion in a case like *Sapir* "based on the insufficiency of the evidence" and in which the petitioner "made no motion for a new trial. . . ." 361 U.S. 416, 425–26, 80 S.Ct. 481, 486, 4 L.Ed.2d 412 (1960). The Court, citing Justice Douglas' concurrence in *Sapir*, stressed that the absence of a motion for new trial "was a decisive factor in Sapir's case." *Id.* at 426, 80 S.Ct. at 487.

*Sapir* and *Forman* indicate that it was the petitioner's request for a new trial in *Bryan* and not his successful appeal which exposed him to a retrial. Both the Fifth and Eighth Circuits have noted the ambiguity created by these opinions and have concluded that they indicate that the Double Jeopardy Clause prohibits the retrial of a defendant whose conviction is overturned for insufficiency of the evidence, unless the defendant has moved for a new trial. *See* cases cited note 23 *infra.*

If, as *Sapir* and *Forman* suggest, there are different standards for reversals for prejudicial error and reversals for insufficient evidence, the *Tateo* fairness rationale justifying the *Ball* principle would not apply so as to permit retrials after reversals for insufficient evidence. The considerations set forth in *Tateo* to justify retrials turn on factors wholly unrelated to the presence or absence of a defense motion for a new trial—the factor made determinative by *Sapir* and *Forman.*

**23.** *See, e. g.,* United States v. Blake, 488 F.2d 101, 107 (5th Cir. 1973); United States v. Koonce, 485 F.2d 374, 382 (8th Cir. 1973) (dictum); United States v. Apollo, 476 F.2d 156, 158 n.1 (5th Cir. 1973); United States v. Robinson, 468 F.2d 189, 194 (5th Cir. 1972); United States v. Musquiz, 445 F.2d 963, 966 (5th Cir. 1971). At least two other circuits have previously identified this question in cases where the court did not have to decide the scope of the double jeopardy protection. *See* United States v. Snider, 502 F.2d 645, 656 n.24 (4th Cir. 1974); Buatte v. United States, 331 F.2d 848 (9th Cir. 1964). The issue has been addressed by a number of commentators. *See, e. g.,* 2 C. Wright, Federal Practice and Procedure, § 470, at 269–72 (1969); 8 Moore's Federal Practice ¶ 29.09[2], at 46–47 & n.16 (1974); Thompson, *supra* note 18, at 507–10; Comment, 31 U.Chi.L.Rev. 365, 365–67 (1964).

**24.** *See* Thompson, *supra* note 18, at 517–18 (demonstrating that the *Tateo* fairness rationale does not apply to reversals for insufficient evidence), 518–19 (indicating the fallacy of the new trial waiver theory indicated by *Sapir* and *Forman* ); Comment, *supra* note 23, at 370–71 (distinguishing reversals for insufficient evidence from reversals for prejudicial error and cogently arguing that considerations of fairness to the Government and the defendant which justify retrials in the latter class of reversals do not apply to the insufficiency of the evidence cases); *cf.* 2 C. Wright, *supra* note 23, at 272–73 ("The notion that the prosecution, having failed to make a sufficient case against an accused, should be given a second opportunity to do better seems fundamentally inconsistent with the Double Jeopardy clause.").

A new trial waiver doctrine bases vital determinations affecting the rights of the accused on what are often routine post-trial motions in the alternative for a new trial filed by appointed counsel. Even if this type of motion were held to remove constitutional restrictions on the relief which the appellate court could order following reversals for insufficient evidence, it would not be in the interest of justice to premise radically different treatment of defendants on such new trial "requests." *See* note 35 *infra.* Moreover, a waiver should not result even where the defendant's sole ground for appeal is the insufficiency of the evidence and a new trial motion is deliberately made. By adding the new trial motion the defendant is plainly not asking for a retrial where the court considers the lack of evidence to require the grant of his motion for judgment of acquittal. Rather, he is seeking to obtain a new trial when the court considers the evidence to be marginally sufficient but determines that the state of the evidence calls for a new trial in the interest of justice. *See* 2 C. Wright, Federal Practice and Procedure § 553, at 486–87 (1969) (discussing the difference between a

shadowed[25] and in view of Wiley's motion in the alternative for a new trial, we can and shall proceed in this case by assuming that his second trial did not violate the constitutional prohibition against double jeopardy. We reverse, as will be seen, on our authority under 28 U.S.C. § 2106.

## C.

■ In addition to constitutional commands, the federal appellate courts are governed in their decisionmaking by the statutory directive of 28 U.S.C. § 2106 that they shall dispose of appeals in the interest of justice. This permits and indeed counsels protection of sound and substantial interests of the accused even when they do not rise to the level of constitutional protections.[26]

■ In this circuit, that statutory directive has led us to a number of rulings protecting the accused's interest in an

acquittal when the prosecution has failed to present sufficient evidence to go to the jury.[27] The interest is one for the trial judge to vindicate in the first instance under the command of Rule 29, Fed.R.Crim.P.[28] But if the trial judge fails in this assignment, the appellate court will exercise its discretionary authority under § 2106 to provide that protection even if the defendant may have moved in the alternative for a new trial.

The doctrine has roots in our 1963 decision in Cephus v. United States.[29] There we held that where, as here, the trial court denies a motion for judgment of acquittal, the accused is entitled to have the sufficiency of the Government's case-in-chief reviewed on appeal regardless of whether he subsequently put on a defense which filled in the holes in the prosecution's case.[30] The decision fosters "[o]ne of the greatest safeguards for the individual under our system of criminal justice"—"the requirement that the pros-

motion for judgment of acquittal under Rule 29 and a motion for a new trial on the ground that the verdict is against the weight of the evidence under Rule 33).

**25.** *See* Rowe v. Peyton, 383 F.2d 709, 714 (4th Cir. 1967), *aff'd*, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968); Spector Motor Service, Inc. v. Walsh, 139 F.2d 809, 823 (2d Cir.) (Hand, J., dissenting), *vac.* 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944), *on remand,* 181 F.2d 150 (2d Cir. 1950), *rev'd* 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951); *cf.* United States v. Mason, 412 U.S. 391, 93 S.Ct. 2202, 37 L.Ed.2d 22 (1973).

**26.** 28 U.S.C. § 2106 provides:

The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court . . . and may remand the cause and direct entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

An appellate court may, on direct appeal, reverse in the interest of justice on grounds that have a constitutional aura but are not considered to amount to a constitutional violation. *Compare* Dyer v. United States, 126 U.S.App. D.C. 312, 379 F.2d 89 (1967) *with* Bruce v. United States, 126 U.S.App.D.C. 336, 340, 379 F.2d 113, 117 (1967).

Appellant Wiley did not contend that his second trial violated the Double Jeopardy

clause. We do not consider or decide that constitutional question, resting our ruling on 28 U.S.C. § 2106.

**27.** *See* cases cited at notes 30 and 34 *infra.*

**28.** Rule 29(a) authorizes the defendant to move for a judgment of acquittal at the close of the evidence offered by the Government. It makes "[a] judgment of acquittal . . . mandatory if the Government's case is insufficient." Cerphus v. United States, 117 U.S.App. D.C. 15, 19, 324 F.2d 893, 897 (1963); Advisory Committee's Note, 39 F.R.D. 69, 191 (1966).

**29.** 117 U.S.App.D.C. 15, 324 F.2d 893 (1963).

**30.** *See, e. g.,* United States v. Watkins, 171 U.S.App.D.C. ——, at ——, 519 F.2d 294, at 297 (1975); United States v. Bethea, 143 U.S.App. D.C. 68, 70 n.4, 442 F.2d 790, 792 n.4 (1971); United States v. Sutton, 138 U.S.App.D.C. 208, 217 & n.67, 426 F.2d 1202, 1211 & n.67 (1969); Austin v. United States, 127 U.S.App.D.C. 180, 189 n.20, 382 F.2d 129, 138 n.20 (1967).

We express no opinion concerning the permissibility of an appeal on double jeopardy grounds or one invoking § 2106 to prevent a retrial where the trial judge denies the defendant's motion for judgment of acquittal and grants him a new trial based on the weight of the evidence. That question must be considered in a more focused context where the considerations of equity and judicial economy are fully ventilated and necessary for decision.

ecution must establish a prima facie case by its own evidence before the defendant may be put to his defense." [31] That safeguard would be undermined if the judge's error in denying a motion for judgment of acquittal exposed the accused to a retrial at which the prosecution could supplement its case.

■ The presumption against retrials following reversals for insufficient evidence has been carried forward in a series of lesser included offense cases beginning with Austin v. United States in 1967.[32] In that case this court relied on its authority under § 2106 to adopt a procedure of vacating a conviction when the Government's evidence is insufficient to establish an element of the offense and remanding for sentencing on the lesser included offense for which the evidence was sufficient, unless the trial judge exercises his discretion to order a retrial on the lesser offense.[33] In none of the Austin line of decisions has this

court permitted retrial on the offense for which the prosecution's proof at the initial trial was insufficient.[34] We do not believe that the defendant's right to avoid a retrial on a serious offense should turn on the happenstance whether the offense charged embraces a lesser crime requiring fewer elements of proof.[35]

### D.

■ There are exceptions to the rule of appellate-mandated acquittal. That rule and the exceptions to it are rooted in the interest of justice. The rule does not apply and exceptions need not be invoked unless the evidence is truly insufficient to sustain a conviction. There are cases in which the appellate court will use words of insufficiency of evidence when the more accurate analysis of the reversal is a determination that a retrial would be just and appropriate because the conviction was in the teeth of minimally sufficient evidence; such

---

31. Cephus v. United States, 117 U.S.App.D.C. at 17, 324 F.2d at 895.

32. 127 U.S.App.D.C. 180, 382 F.2d 129 (1967).

33. Id. at 193–94, 382 F.2d at 142–43.

34. See, e. g., United States v. Melton, 160 U.S. App.D.C. 252, 254, 491 F.2d 45, 47 (1973); Allison v. United States, 133 U.S.App.D.C. 159, 164–65, 409 F.2d 445, 449–50 (1969); Hemphill v. United States, 131 U.S.App.D.C. 46, 50, 402 F.2d 187, 191 (1968); Austin v. United States, 127 U.S.App.D.C. 180, 193–94, 382 F.2d 129, 142–43 (1967); cf. United States v. Thomas, 144 U.S.App.D.C. 44, 52, 444 F.2d 919, 927 (1971) (retrial on greater offense permitted where evidence at first trial was sufficient to support a conviction for that offense); United States v. Bryant, 137 U.S.App.D.C. 124, 132–33 n.17, 420 F.2d 1327, 1335–36 n.17 (1969) (retrial on greater offense permitted since evidence at first trial marginally sufficient). At oral argument on appeal, counsel for the Government could not point to a case in which this court has indicated that a retrial would be permissible on a greater offense for which there had been insufficient evidence at the first trial.

35. A general presumption against retrials following reversals for insufficient evidence also serves to avoid disparate treatment of similarly situated defendants. If a defendant moves

for a judgment of acquittal following the Government's case-in-chief, the trial court must acquit the defendant if "the evidence is insufficient to sustain a conviction of such offense or offenses." Rule 29, Fed.R.Crim.P. Such an acquittal bars the Government from subjecting the defendant to another prosecution for the same offense. If instead the trial judge erroneously denied the defendant's motion and the defendant obtained a reversal on appeal on the grounds of insufficient evidence, it would not ordinarily be in the interest of justice to subject the defendant to a retrial. The only difference in the two cases—the error of the trial court—provides no justification for a difference in treatment. See, e. g., United States v. Dotson, 440 F.2d 1224, 1225 (10th Cir. 1971) ("We are unable to perceive why the government's position should be improved by failing to recognize the defect until the appeal stage. If the defendant should have been acquitted for insufficient proof, he ought not be subsequently penalized for his effort to rectify the original error."); People v. Brown, 99 Ill.App.2d 281, 293 n.2, 241 N.E.2d 653, 659 n.2 (1968); Thompson, supra note 7, at 514; cf. Mayers and Yarbough, Bis Vexari: New Trials and Successive Prosecutions, 74 Harv.L.Rev. 1, 13 (1960) ("If the state cannot have a new trial following an erroneous acquittal, it certainly should not have this advantage when the acquittal was erroneously denied.").

cases would fall within the exceptions that permit trial.[36]

The Supreme Court's decisions concerning the permissibility of retrials following mistrials provide an analogy pointing to the types of circumstances in which a second trial would be just and appropriate.[37] In the mistrial cases, the Court has adopted a flexible approach of allowing a new trial where the mistrial was the result of "a manifest necessity" and "the ends of public justice would

otherwise be defeated."[38] This formulation reflects a recognition that in some situations compelling considerations will outweigh the defendant's interest in limiting the prosecution to a single proceeding before the original trier of fact.

 As a general matter, such manifest necessity will not be present in insufficiency of the evidence cases when the Government has had one fair opportunity to satisfy the minimal requirement of presenting a *prima facie* case.[39]

**36.** We do not believe that an order granting a defendant a new trial should be used by an appellate court to avoid ruling on the legal sufficiency of the evidence at the accused's first trial. *But compare* United States v. Parks, 460 F.2d 736, 745–46 (5th Cir. 1972). Such an approach would be at odds with our decisions interpreting Rule 29. *See* text at notes 29–31 and notes 29–31 *supra.*

**37.** The analogy is not a perfect one. In the mistrial cases, unlike the reversal for insufficient evidence cases, the defendant has "been deprived of his option to go to the first jury and, perhaps, end the dispute then and there with an acquittal." United States v. Jorn, 400 U.S. 470, 484, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) (plurality opinion of Harlan, J.). But, as Justice Harlan observed in United States v. Tateo, 377 U.S. 463, 467, 84 S.Ct. 1587, 1590, 12 L.Ed.2d 448 (1964), "[a] defendant is no less wronged by a jury finding of guilt after an unfair trial [or one involving insufficient evidence] than by a failure to get a jury verdict at all; the distinction between the two kinds of wrongs affords no sensible basis for differentiation with regard to retrial."

**38.** *See, e. g.,* Illinois v. Somerville, 410 U.S. 458, 461, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425 (1973), *quoting* United States v. Perez, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824).

**39.** We are cognizant that in most circuits the decision to permit a new trial generally turns on whether the Government could supplement its inadequate case if allowed to retry the defendant. *See, e. g.,* United States v. Koonce, 485 F.2d 374, 382 (8th Cir. 1973). Where the Government has put in all of its evidence or the court of appeals concludes that there is no realistic possibility of remedying the deficiency, the case is remanded with instructions to dismiss the indictment. *See, e. g.,* United States v. Snider, 502 F.2d 645, 656 (4th Cir. 1974); United States v. Edmons, 432 F.2d 577 (2d Cir. 1970); Murray v. United States, 403 F.2d 694 (9th Cir. 1968). In some cases a mere possibility of obtaining sufficient evidence has been found adequate to make a re-

trial just and appropriate. *See, e. g.,* United States v. Koonce, 485 F.2d 374 (8th Cir. 1973); United States v. Morado, 454 F.2d 167 (5th Cir.), *cert. denied* 406 U.S. 917 (1972), 92 S.Ct. 1767, 32 L.Ed.2d 116; Beltran v. United States, 302 F.2d 48, 52 (1st Cir. 1962).

We have carefully considered the approach employed in these and numerous similar cases and conclude that in general it is not in the interest of justice to accord the prosecution more than one fair opportunity to present a *prima facie* case against a criminal defendant. To do so would enable the prosecution to utilize evidence presented by the defense to build a *prima facie* case at retrial and to correct tactical mistakes in order to enhance the prospects of obtaining and sustaining a conviction. Moreover, confining the Government to a single prosecution furthers sound judicial administration by creating incentives for thorough preparation and careful presentation of the Government's case. These considerations coupled with the policy against multiple prosecutions, the policy underlying Rule 29, and the interest in avoiding disparate treatment of similarly situated defendants (*see* note 35 *supra*) outweigh the Government's interest in obtaining convictions.

Our approach is comparable to that taken in some prior circuit court opinions. *See, e. g.,* United States v. Bass, 490 F.2d 846, 852–53 (5th Cir. 1974) (ruled district judge may refuse to permit a retrial "if he finds from the record that the prosecution had the opportunity to develop its case . . . at the first trial."); United States v. Smith, 437 F.2d 538, 542 (6th Cir. 1970) (retrial "hinges, in our view, on whether the Government was unfairly prevented from producing competent evidence"); United States v. Howard, 432 F.2d 1188, 1191 (9th Cir. 1970) (concurring opinion of Ely, J. in which Hufstedler, J., joined) (where the prosecution "had the opportunity fully to develop its case, or, in fact, did so" and "[i]f it did, or if it appears that it was responsible for its failure adequately so to do, then it is not ordinarily fair that the successful appellant should be required to undergo another trial").

However, the Government may meet its burden of justifying a retrial by pointing to unusual circumstances which denied it a fair chance to prove its case. One such circumstance was recognized by this court in Franklin v. United States, where we held it in the interest of justice to permit a retrial under circumstances of a revision in evidentiary requirements taking place after trial.[40] Thus, if there had been no corroboration requirement in sex offense cases prior to Wiley's first trial or had the reversal stemmed from a startling application of established principles, it would defeat the ends of public justice to deprive the prosecution of an opportunity to present evidence on that issue at a retrial. Retrials would also appear permissible, for example, where the Government was prevented from introducing sufficient evidence by an erroneous ruling of the trial judge, improperly excluding or suppressing Government evidence or denying a reasonable motion to reopen its case or to obtain a brief continuance to supply additional evidence.

### III. Application of the Rule to the Present Case

Here the Government cannot meet its burden of establishing that the insufficiency of the evidence at the first trial resulted from some manifest necessity. The corroboration rule upon which this court reversed Wiley's first conviction was established law in this jurisdiction.[41] The prosecutor was fully aware of the corroboration requirement and emphasized the rule in his opening statement to the jury. (Tr. 10). Although the corroboration rule was beginning to undergo some reexamination in this court at the time of the first trial, the prosecution is not entitled to assume that there will be a relaxation of the proof required to sustain a conviction. Here the prosecutor proceeded at the first trial without the testimony of the examining physician. Just as where the Government intentionally rests on weak evidence in a test case designed to prompt a change in existing doctrine, the prosecution here can hardly claim unfair surprise at this court's determination that its case, which was marginal at best, was legally inadequate.

We are aware that prior to the first trial this court had begun to relax its previous corroboration approach, but it had done this by retaining the corroboration requirement and developing a flexible standard with "each case evaluated on its merits." The requisite nature of the corroborative evidence required under the standard varied "markedly depending upon the age and sex of the complainant, the existence of a previous relationship between complainant and defendant, and other circumstances of the case."[42] In the prior cases in which this court had found sufficient corroboration of penetration, the evidence was stronger than that adduced by the prosecution at Wiley's first trial.[43] Moreover,

---

**40.** 117 U.S.App.D.C. 331, 330 F.2d 205 (1964).

**41.** *See, e. g.,* United States v. Terry, 137 U.S. App.D.C. 267, 270–72, 422 F.2d 704, 707–09 (1970); Coltrane v. United States, 135 U.S. App.D.C. 295, 298–301, 418 F.2d 1131, 1134–37 (1969).

**42.** United States v. Terry, 137 U.S.App.D.C. at 270–71, 422 F.2d at 707–08; *see* Bailey v. United States, 132 U.S.App.D.C. 82, 88, 405 F.2d 1352, 1358 (1968). *See also* United States v. Gray, 155 U.S.App.D.C. 275, 276, 477 F.2d 444, 445 (1973); United States v. Jones, 155 U.S. App.D.C. 328, 477 F.2d 1213 (1973).

**43.** *See* Brief for Appellant in No. 72–1878 at 16–18 (describing corroborating evidence offered in ten prior rape or carnal knowledge convictions affirmed by this circuit prior to Wiley's first trial). In United States v. Bryant, 137 U.S.App.D.C. 124, 128, 420 F.2d 1327, 1331 (1969), we deemed evidence of a torn shoulder strap, bruises, shaking and a prompt report to the police to be only marginally sufficient to corroborate an adult complainant when the charge was assault with intent to commit rape—a crime where the "jury's role is . . . greater than in the normal corroboration question . . . ." United States v. Terry, 137 U.S.App.D.C. at 270, 422 F.2d at 707. And in Allison v. United States, 133 U.S. App.D.C. 159, 164, 409 F.2d 445, 450 (1969), we held that a prompt report to police and a friend, a distraught emotional state, and testimony of a witness who heard the complainant screaming and saw the defendant on top of

the tender age of the complainant in this case heightened the quantum of corroborating evidence required. The cases that signaled a relaxation of the corroboration approach all alerted the prosecution to the significance, in terms of the amount of corroboration required, of the age of the complainant. The prior panel took note of this court's " 'traditional skepticism' toward accusations of children." [44] Its conclusion that there was insufficient corroboration of the testimony of the twelve-year-old complainant was hardly an aberrational application of the pertinent standard.

Our careful study of the portion of the record dealing with the corroboration issue and the motion for judgment of acquittal reveals that the insufficiency of the prosecution's case was attributable to inadequate preparation and presentation of the evidence against Wiley. The trial judge informed Government counsel of his concern about the corroborating evidence and cautioned the prosecutor prior to the close of the Government's case that he "better get a doctor over here." (Tr. 48). The prosecutor attempted to contact the doctor but discovered that he was on vacation. He gave no indication to the trial judge that he had any additional corroborative evidence available and made no request for a brief continuance to develop such evidence. The result was the same as if the Government had announced ready, commenced its case, and then discovered an important witness was unavailable.

The record of the first trial reveals that, through the testimony of the two police officers, the Government introduced the following evidence to corroborate Ms. Lewis' testimony: (1) the complainant made a prompt report of the incident to the officers; (2) she was crying and upset at that time; (3) her clothing was disheveled; and (4) she had no coat on even though it was a cool day. Prior to the close of the Government's

case-in-chief, the trial judge brought up the subject of medical testimony:

[At the bench:]

THE COURT: Do we have some medical testimony?

MR. ROBINSON [for the Government]: The defense is going to be, as I understand it, that Cunningham is guilty of all this, and there was sperm found intact. I have to get a stipulation.

THE COURT: The defendant himself has to stipulate, not just counsel.

MR. RESPESS [for the Defendant]: I have to have a few seconds to read these papers in front of me. If we are going to stipulate I will let you know before we eat lunch.

MR. ROBINSON: I thought we could try to get the doctor over here.

THE COURT: It would be a lot safer if you got the doctor. This business of expecting a defendant to stipulate under these new rules is absurd. You never know what they are going to do.

MR. ROBINSON: I will see what his defense is going to be.

THE COURT: You have aiding and abetting in this case. Did you ever think of that? Then you better get a doctor over here.

[In open Court.]

THE COURT: We will recess until 1:45.

(Tr. 47–48).

After lunch, the prosecutor informed the court that he learned during recess that the examining doctor was "apparently on vacation." (Tr. 49). The prosecutor made no attempt to obtain a brief continuance in order to acquire other evidence of the results of the medical examination. Following testimony by a final Government witness, the prosecution rested and the defendant moved for a judgment of acquittal based on the failure to corroborate the complaint's

---

her was insufficient to corroborate assault with intent to commit carnal knowledge in a case involving an eleven-year-old complainant.

44. As exemplified in Wilson v. United States, 106 U.S.App.D.C. 226, 271 F.2d 492 (1959), cited in Wiley I, 160 U.S.App.D.C. at 284, 492 F.2d at 550.

testimony on the element of penetration. The trial judge then reviewed the evidence with counsel and ultimately denied the motion, stating: "This case is right square dab on the edge, and I believe that there is enough to go to the jury on the corpus delicti." (Tr. 58). On appeal, this court held that the evidence provided insufficient corroboration and that the motion for judgment of acquittal should have been granted.

At the second trial, the prosecution called the examining physician and presented other medical and nonmedical evidence corroborating the complainant's account. The examining doctor stated that on the day of the incident he found "a pearly-white fluid" in the complainant's vagina and made a vaginal smear that was sent to a pathologist. He also found bruises on Ms. Lewis' neck. Dr. Athanasiadou, a pathologist, testified that she had performed a test on the slide shortly before the second trial and found intact sperm. She also related that a similar finding had been made by another pathologist prior to the first trial. In addition to this medical testimony, the Government introduced an FBI report revealing that tests run on Ms. Lewis' clothing and the sheets in the apartment indicated the presence of semen stains.[45]

Upon review of the evidence under the standard set forth in this opinion, we find that the Government has not established that the insufficiency of the evidence at appellant's first trial was attributable to any manifest necessity. We conclude that it was not just and appropriate under the circumstances to subject appellant to a second trial and that the resulting conviction must be set aside and the case remanded with instructions to enter a judgment of acquittal.[46]

*Reversed and remanded with instructions.*

---

**45.** The additional corroborative evidence introduced at the second trial indicates the inadequacy in the preparation for the first trial.

TAMM, Circuit Judge (dissenting):

While I agree that the Government was grossly negligent in its presentation of this case, I do not think that the "interest of justice" is best served by disposing of the present conviction by reversal.

---

**46.** In view of our disposition, we need not reach appellant's speedy trial, ineffective assistance of counsel, and improper instruction challenges to his conviction.