**Johnnie Marie SUMPTER,
Petitioner-Appellant,**

v.

**James DeGROOTE, Sheriff of
Vanderburgh County, Indiana,
Respondent-Appellee.**

**No. 76–1849.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 18, 1977.

Decided April 1, 1977.

---

John D. Clouse, Edwin R. Smith, Jr., Evansville, Ind., for petitioner-appellant.

Theodore L. Sendak, Atty. Gen., Darrel K. Diamond, Asst. Atty. Gen., Indianapolis, Ind., for respondent-appellee.

Before BAUER, and WOOD, Circuit Judges, and FOREMAN, District Judge.[*]

* The Hon. James L. Foreman, United States District Court for the Eastern District of Illinois, is sitting by designation.

1. The Indiana Supreme Court has already rejected each of the federal constitutional claims presented here on direct appeals from Sumpter's conviction. *Sumpter v. State*, Ind., 340 N.E.2d 764, *cert. denied*, 425 U.S. 952, 96 S.Ct. 1727, 48 L.Ed.2d 196 (1976); *Sumpter v. State*, 261 Ind. 471, 306 N.E.2d 95, *appeal dismissed*, 419 U.S. 811, 95 S.Ct. 25, 42 L.Ed.2d 38 (1974). Accordingly, Sumpter was not required to exhaust state post-conviction remedies before

BAUER, Circuit Judge.

Johnnie Marie Sumpter, now serving a two-to-five year sentence for prostitution, appeals the district court's dismissal of her petition for a writ of habeas corpus, which alleges that the State of Indiana is holding her in custody in violation of several provisions of the United States Constitution.[1] We reverse the district court for the reason that Sumpter was twice placed in jeopardy for the same offense in violation of the Fifth Amendment, as incorporated in the due process clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

I.

Sumpter was charged with prostitution under an Indiana statute providing that

"[a]ny *female* who frequents or lives in a house or houses of ill fame, knowing the same to be a house of ill fame, or who commits or offers to commit one (1) or more acts of sexual intercourse or sodomy for hire, shall be deemed guilty of prostitution, and on conviction thereof shall either be fined not less than one hundred dollars ($100) nor more than five hundred dollars ($500); and imprisonment not to exceed 180 days or such person may be imprisoned in the Indiana women's prison not less than two (2) years nor more than five (5) years." 35 Ind.Code § 30–1–1 (1971) (emphasis added).

Following a jury trial, Sumpter was found guilty of prostitution [2] and sentenced to the maximum term of two to five years in the women's penitentiary.

bringing her habeas corpus petition. *Brown v. Allen*, 344 U.S. 443, 447, 73 S.Ct. 397, 97 L.Ed. 469 (1953).

2. Sumpter's conviction was premised on evidence showing that she lived in a house of prostitution knowing it to be such, rather than on evidence that she offered to engage, or did engage, in acts of sexual intercourse or sodomy for hire. See *Sumpter v. State*, Ind.App., 296 N.E.2d 131, 132 (1973), *rev'd*, 261 Ind. 471, 306 N.E.2d 95, *appeal dismissed*, 419 U.S. 811, 95 S.Ct. 25, 42 L.Ed.2d 38 (1974).

Her conviction was reversed by the Indiana Court of Appeals because the State had neglected to present any evidence that Sumpter was a female, an essential element of the crime set out in the statute. *Sumpter v. State*, Ind.App., 296 N.E.2d 131 (1973).

The State appealed, and the Indiana Supreme Court reversed. Although noting that the court of appeals had "correctly applied existing law in reversing the trial court," the supreme court determined that the "method and sequence of proof" of a defendant's sex was "in need of modification." *Sumpter v. State*, 261 Ind. 471, 473–74, 306 N.E.2d 95, 98–99 (1974). Under the new procedure established, lower courts were to take judicial notice of a defendant's sex. Only if the defendant produced evidence sufficient to rebut the presumption created by the court's action, would the State then be required to prove the defendant's sex beyond a reasonable doubt by affirmative evidence. Believing that the interests of justice required retroactive application of the new procedure, the Indiana Supreme Court affirmed Sumpter's conviction "in part" and remanded the case to the trial court for "determination of [her] sex pursuant to the [new] procedure." *Id.* at 483, 306 N.E.2d at 104.

Sumpter then sought review by the United States Supreme Court, which dismissed the appeal for want of jurisdiction. *Sumpter v. Indiana*, 419 U.S. 811, 95 S.Ct. 25, 42 L.Ed.2d 38 (1974).

On remand, Sumpter raised a timely double jeopardy objection to retrial of the sex issue. The trial court overruled the objection, denied a motion for a jury trial, took judicial notice that "she" was a female, rejected rebuttal evidence,[3] and found "her" guilty.

Sumpter appealed, and the case was transferred directly to the Indiana Supreme Court. She argued, *inter alia*, that the effect of the remand was to place her in double jeopardy. The court recognized that "the proceedings on remand were 'devoted to the resolution of factual issues going to the elements of the offense charged,' and therefore at odds with the constitutional policy against multiple trials." *Sumpter v. State*, Ind. 340 N.E.2d 764, 766 (1976), quoting *United States v. Jenkins*, 420 U.S. 358, 370, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975). Nevertheless, relying on cases establishing that the double jeopardy clause does not bar retrial of a defendant whose conviction is reversed on appeal,[4] the court rejected Sumpter's claim and affirmed her conviction.

The United States Supreme Court then denied Sumpter's petition for a writ of certiorari. *Sumpter v. Indiana*, 425 U.S. 952, 96 S.Ct. 1727, 48 L.Ed.2d 196 (1976).

Sumpter subsequently brought the petition for a writ of habeas corpus now before us on appeal from the district court's dismissal. She raises a host of federal constitutional claims for our consideration.

Specifically, Sumpter contends that the Indiana prostitution statute under which she was convicted violates (1) the equal protection clause of the Fourteenth Amendment, because it applies only to females[5]

---

3. Sumpter offered into evidence medical treatises describing various genetic and pathological conditions that would make it difficult, if not impossible, to determine an affected person's sex merely from direct observation. Because Sumpter failed to show that she suffered from any of the described conditions, the Indiana Supreme Court upheld the lower court's ruling that this evidence was insufficient to rebut the presumption created by the judge's taking notice of her sex. *Sumpter v. State*, Ind., 340 N.E.2d 764, 766, 769, *cert. denied*, 425 U.S. 952, 96 S.Ct. 1727, 48 L.Ed.2d 196 (1976).

4. *Bryan v. United States*, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335 (1950); *United States v. Ball*,

163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896).

5. The statute was later amended to apply to "Any person." Burns Ind.Stat.Ann. § 35–30–1–1 (1975). Effective July 1, 1977, the statute will be repealed and reenacted as follows:
 "35–45–4–2. *Prostitution*.
 A person who knowingly or intentionally performs, or offers or agrees to perform, sexual intercourse or deviate sexual conduct for money or other property commits a Class A misdemeanor." Burns Ind.Stat.Ann. § 35–45–4–2 (Cum.Supp.1976).
The act repealing and reenacting the statute provides a savings clause for crimes committed

and imposes a harsher sentence than does a companion statute that applies to males who frequent houses of ill fame;[6] (2) the due process clause of the Fourteenth Amendment, because the terms "house of ill fame" are unconstitutionally vague and archaic;[7] and (3) the cruel and unusual punishment clause of the Eighth Amendment, both because the statute criminalizes the "status" of living in a house of ill fame,[8] and because it imposes a harsher sentence for that offense than does a companion statute for the allegedly greater offense of keeping a house of ill fame.[9]

In addition to her constitutional attacks on the statute, Sumpter claims that a new criminal procedure unconstitutionally shifting the burden of proving a material element of the crime charged,[10] i.e., her sex, was retroactively imposed on her in violation of the due process clause of the Fourteenth Amendment and what she calls the "ex post facto principle" embodied in Article I, section 10.[11] Finally, Sumpter says that she was denied her right to a jury trial under the Sixth Amendment,[12] and placed in double jeopardy in violation of the Fifth Amendment,[13] when her case was remanded for retrial of the issue of her sex.

Because we agree that Sumpter was twice placed in jeopardy for the same offense, we need not address the merits of her other constitutional claims. By resting our

decision on this ground, we can afford Sumpter the unconditional release from custody to which she is entitled without having to rule on the constitutionality of the statute under which she was convicted and sentenced.

## II.

The State finds "baffling" Sumpter's claim that the Indiana Supreme Court placed her in double jeopardy by remanding her case solely to give the prosecution a chance to retry one element of its fatally defective case. Noting that the double jeopardy clause permits retrial of a defendant after reversal of his conviction, the State reasons that its remand must be permissible a fortiori because it imposed a "lesser burden" of reprosecution on Sumpter than an outright reversal and trial de novo would have.

As the Indiana Supreme Court observed, United States v. Ball, 163 U.S. 662, 672, 16 S.Ct. 1192, 41 L.Ed. 300 (1896), construes the double jeopardy clause as permitting retrial of a defendant whose conviction has been set aside on appeal. Moreover, Bryan v. United States, 338 U.S. 552, 560, 70 S.Ct. 317, 94 L.Ed. 335 (1950), extends the Ball rule to cases where reversal results from want of sufficient evidence to support a jury's verdict. Because the remand at issue here was caused by a like defect in the

---

prior to its effective date. Pub.L. No. 148, § 27, [1976] Ind. Acts.

6. The companion statute imposed a maximum term of 60 days in the county jail on those who, "being a male person," frequented houses of ill fame. 35 Ind.Code § 45–4–3 (1972). This statute has since been amended to delete the requirement that the accused to be a "male person." Burns Ind.Stat.Ann. § 35–1–87–2 (1975).

7. E. g., Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).

8. E. g., Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962); Lambert v. California, 335 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957).

9. E. g., Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910). The companion statute, which imposes a maximum term of

six months in the county jail, encompasses allowing premises over which one has the right of control to be used for purposes of prostitution. 35 Ind.Code § 1–83–2 (1972), construed in Senst v. State, Ind.App., 319 N.E.2d 663 (1974).

10. E. g., Mullaney v. Wilbur, 419 U.S. 823, 95 S.Ct. 39, 42 L.Ed.2d 47 (1975).

11. E. g., Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964); United States v. Wasserman, 504 F.2d 1012 (5th Cir. 1974).

12. E. g., Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

13. E. g., Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

State's case against Sumpter, the Indiana Supreme Court thought the *Ball* rule as applied in *Bryan* controlling. *Sumpter v. State,* Ind., 340 N.E.2d 764, 766–67, *cert. denied,* 425 U.S. 952, 96 S.Ct. 1727, 48 L.Ed.2d 196 (1976). We respectfully disagree.

We believe *Ball* and *Bryan* are distinguishable from the case at bar because retrials were permitted in those cases only after an outright reversal of a conviction that required the prosecution on remand to again meet its burden of proving *every* essential element of the crime charged. Here, in contrast, Sumpter did not start off on an equal footing with the State on remand because her conviction was affirmed in part on appeal. An examination of the premises underlying the *Ball* rule provides, we think, an appropriate backdrop against which to elaborate the significance of the distinction we advance here.

**14.** *Ball* itself, like its progeny on which *Bryan* relies, is premised on the view that a defendant waives the right to claim double jeopardy following reversal of a conviction on appeal. Though *Green v. United States,* 355 U.S. 184, 192, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), later exposed the presumptive-waiver theory as a doctrinal fiction, the Court's dicta in *Forman v. United States,* 361 U.S. 416, 426, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960), suggests that the theory retains some vitality, much to the chagrin of its many critics. E. g., *United States v. Wiley,* 170 U.S.App.D.C. 382, 517 F.2d 1212, 1215–17 (1975); *People v. Brown,* 99 Ill.App.2d 281, 241 N.E.2d 653, 661–62 (1st Dist.1968); C. Wright, *Federal Practice and Procedure* § 470, at 272–73; Cahan, *Granting the State a New Trial After an Appellate Reversal for Insufficient Evidence,* 57 Ill.B.J. 448, 452–55 (1969); Fisher, *Double Jeopardy: Six Common Boners Summarized,* 15 U.C.L.A.L.Rev. 81, 82–83 (1967); Mayers & Yarbrough, Bis Vexari: *New Trials and Successive Prosecutions,* 74 Harv.L.Rev. 1, 6–7, 19–22 (1960); Thompson, *Reversals for Insufficient Evidence: The Emerging Doctrine of Appellate Acquittal,* 8 Ind.L.Rev. 497, 507–10 (1975); Note, *Double Jeopardy: A New Trial After Appellate Reversal for Insufficient Evidence,* 31 U.Chi.L.Rev. 365, 367 (1964).

A second traditional justification offered for the rule is the "continuing jeopardy" theory first advanced by Justice Holmes in dissent to *Kepner v. United States,* 195 U.S. 100, 134–37, 24 S.Ct. 797, 49 L.Ed. 114 (1904). This theory presupposes that jeopardy attaches at trial and

### III.

Although several theoretical justifications have been proposed to support the *Ball* rule,[14] the Supreme Court's current explanation for the rule is "the practical justification" that it "is simply . . . fairer to both the defendant and the Government." *United States v. Wilson,* 420 U.S. 332, 343 n.11, 95 S.Ct. 1013, 1022, 43 L.Ed.2d 232 (1975). The Court's "fairness" rationale draws upon Justice Harlan's opinion in *United States v. Tateo,* 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964), for analytical support:

"While different theories have been advanced to support the permissibility of retrial, of greater importance than the conceptual abstractions employed to explain the *Ball* principle are the implications of that principle for the sound administration of justice. Corresponding to the right of an accused to be given a fair

continues through post-trial proceedings, including appeal and retrial, until ended by a "final" judgment of acquittal or conviction. Though the theory has been invoked as late as *Price v. Georgia,* 398 U.S. 323, 326–29, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970), and enjoys some support in prior precedent of this Circuit, *United States v. Berry,* 309 F.2d 311, 313 (7th Cir. 1962), *cert. denied,* 372 U.S. 970, 83 S.Ct. 1096, 10 L.Ed.2d 132 (1963), and among the commentators, Mayers & Yarbrough, *supra* at 8–15, it has been consistently repudiated by the Supreme Court in recent opinions. *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 1788, 44 L.Ed.2d 346 (1975); *United States v. Jenkins,* 420 U.S. 358, 369–70, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975); *United States v. Wilson,* 420 U.S. 332, 351–52, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). After all, the theory is fundamentally at odds with normative notions of the "finality" of appealable judgments and with the current law regarding the attachment and detachment of jeopardy. E. g., *Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975); *Green v. United States,* 355 U.S. 184, 191, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

The more recently advanced "clean-slate" theory rests the permissibility of retrial on the fact that "the original conviction, at the behest of the defendant, has been wholly nullified and the slate wiped clean." *North Carolina v. Pearce,* 395 U.S. 711, 721, 89 S.Ct. 2072, 2078, 23 L.Ed.2d 656 (1969). It appears to be only an amalgam of the earlier "waiver" and "continuing jeopardy" theories.

trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest." *Id.* at 466, 84 S.Ct. at 1589.

As *Wilson* and *Tateo* intimate, the *Ball* rule rests on an "analysis of the respective interests involved." *Breed v. Jones*, 421 U.S. 519, 534, 95 S.Ct. 1779, 1788, 44 L.Ed.2d 346 (1975). Simply put, the rule embodies the Court's judgment that the societal cost of immunizing the guilty from retrial outweighs the heavy burdens that reprosecution imposes on the accused.[15]

We have no quarrel with that judgment as a general proposition and are not hesitant to apply the *Ball* rule following reversals prompted by defective indictments or other procedural errors of law. E. g., *United States v. Lee*, 539 F.2d 612, 614 (7th Cir.1976). In such cases, the societal price of immunizing a defendant whose guilt has already been sufficiently established by the evidence presented at trial is, to be sure, simply too high to countenance. It seems eminently equitable that the remedy provided defendants who complain of such er-

rors of law on appeal be limited to the prior notice of the crime charged or the fair trial procedure to which they were entitled as a matter of due process.

In a case such as this, however, we believe the considerations motivating the balance of interests struck by application of the *Ball* rule in the above cases have· less force. Cases involving reversals grounded upon the insufficiency of the evidence of fact presented at trial, rather than reversals occasioned by procedural errors of law that prejudice the defendant's ability to present his case, bring into play an additional element that tips the scales of justice in the defendant's favor—his innocence as a matter of law. When the prosecution has failed to prove its case after a full and fair opportunity at trial, no "societal interest in punishing one whose guilt is clear"[16] arises, at least not if Justice Harlan meant "guilt" in its constitutional sense—that which is established when the prosecution proves beyond a reasonable doubt "*every* fact necessary to constitute the crime . . . charged."[17] *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.E.d.2d 368 (1970) (emphasis added).

Moreover, rather than serving the "sound administration of justice,"[18] we believe the *Ball* rule operates in practice as an engine of inequity when applied in cases such as *Bryan*. Unlike reversals due to procedural errors of law that impair effective presentation of the defendant's case, reversals based on the failure of the prosecution's proof represent the judgment of an appellate court that the defendant was entitled to a directed acquittal at trial. By subjecting defendants who win such appellate re-

**15.** As the Court noted in *Breed*, a criminal prosecution "imposes heavy pressures and burdens—psychological, physical, and financial—on a person charged." 95 S.Ct. at 1786; accord, *Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

**16.** *United States v. Tateo*, 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964).

**17.** The requirement that the prosecution prove *every* essential element of the crime charged beyond a reasonable doubt is something much

more than a "legal technicality." It is no less than the very essence of the due process of criminal law required by our common law and constitutional traditions. *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 1883, 1888–91, 44 L.Ed.2d 508 (1975); *In re Winship*, 397 U.S. 358, 361–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

**18.** *United States v. Tateo*, 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964).

versals to retrial, *Bryan* serves to heighten rather than mollify disparities inherent in our criminal justice system, for, had the defendants been before other trial judges, they may well have received the directed acquittals to which they were entitled [19] —acquittals from which the prosecution would have no appeal.[20] *Fong Foo v. United States*, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962). By permitting defendants similarly situated with respect to their right to a directed acquittal to be treated differently, *Bryan* works to undermine

rather than promote the fair and impartial administration of criminal justice.[21]

In summary, we believe that the premises of the fairness rationale for the *Ball* rule adopted in *Wilson*—the societal interest in punishing the guilty and the need to promote the sound administration of justice [22] —do not require the rule's application in a case such as this. Sumpter was, by the Indiana Supreme Court's own admission, not proven guilty of the crime of prostitution as defined by the Indiana law applicable at the time of her arrest and trial.[23]

**19.** In assessing *Bryan's* impact on the administration of criminal justice, we must not lose sight of the need to protect the uniformity and integrity of judicial systems administered by human beings prone to occasional error. We concur in the reasoning of our colleagues on the Tenth Circuit:

"[The defendant] properly moved for a judgment of acquittal, alleging insufficient evidence. By admission of the government, the trial court should have sustained the motion. If the motion had then been granted or had the jury acquitted [the defendant], the Fifth Amendment would clearly prohibit a *second attempt at prosecution*. We are unable to perceive why the government's position should be improved by failing to recognize the defect until the appeal stage. If the defendant should have been acquitted for insufficient proof, he ought not to be subsequently penalized for his effort to rectify the original error." *United States v. Dotson*, 440 F.2d 1224, 1225 (10th Cir. 1971) (citations omitted).

**20.** Admittedly, *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), suggests that the prosecution might appeal from an erroneously directed acquittal *following* a jury conviction. Appeals may also be permitted in cases where the judge enters an acquittal in a bench trial because of an erroneous conclusion of law, as long as his findings of fact make unmistakably clear that he resolved against the defendant all the facts necessary to *support a finding of guilt under the correct legal standard*. See *United States v. Rose*, 429 U.S. 5, 97 S.Ct. 26, 50 L.Ed.2d 5 (1976); *United States v. Morrison*, 429 U.S. 1, 97 S.Ct. 24, 50 L.Ed.2d 1 (1976).

But *Wilson, Morrison* and *Rose* do not call into question *Fong Foo's* holding that no appeal is permitted if the trial judge directs an acquittal prior to verdict or instructs the jury to acquit, even if his action is erroneously based. Nor do those decisions repeal the rule barring an appeal from a bench trial acquittal or directed verdict "bottomed on factual considerations . . . made on the basis of evidence adduced at trial." *United States v. Sisson*, 399

U.S. 267, 288, 90 S.Ct. 2117, 2129, 26 L.Ed.2d 608 (1970). In such cases, unlike *Wilson, Morrison* and *Rose*, "further proceedings devoted to the resolution of factual issues going to the elements of the offense charged" would be required on remand of the case to a second factfinder following reversal of a trial judge's erroneous ruling of law. *United States v. Jenkins*, 420 U.S. 358, 370, 95 S.Ct. 1006, 1013, 43 L.Ed.2d 250 (1975).

Obviously, any bench trial acquittal or directed verdict premised on the insufficiency of the evidence to support a guilty verdict is "bottomed on factual considerations . . . made on the basis of the evidence adduced at trial" and would require "further proceedings devoted to the resolution of factual issues going to the elements of the offense charged" if reversed on appeal and remanded. Accordingly, the rationales adopted in *Wilson, Jenkins* and *Sisson* are easily reconciled with *Fong Foo's* holding that the double jeopardy clause bars an appeal by the prosecution in such cases. However, because appellate reversals premised on the same ground are likewise bottomed on an assessment of the trial evidence, *Wilson, Jenkins* and *Sisson* would seem to call into question *Bryan's* holding that further factual resolution of the elements of the crime charged is permissible. See *United States v. Robinson*, 545 F.2d 301, 305 n.5 (2d Cir.1976), *discussed in* note 27 *infra*.

**21.** See, e. g., *United States v. Dotson*, 440 F.2d 1224, 1225 (10th Cir.1971); *United States v. Howard*, 432 F.2d 1188, 1191 (9th Cir.1970) (concurring opinion); *People v. Brown*, 99 Ill. App.2d 281, 241 N.E.2d 653, 659–64 (1st Dist. 1968); Thompson, *supra* note 14, at 513–15.

**22.** *United States v. Tateo*, 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964).

**23.** To be sure, some may argue that, as a practical matter, the State established Sumpter's guilt at trial by proving that she lived in a house of prostitution knowing it to be such. They might urge that we distinguish the case at hand, where the State failed to prove only a

The State, having been given an opportunity to vindicate its interest in trying her,[24] had failed to establish the validity of its interest in punishing her.[25] To permit the State a second bite at the apple in these circumstances would not only interject inequity into the administration of criminal justice but also serve to condone and perhaps perpetuate careless prosecutorial trial preparation and practice.

### IV.

We recognize that, as long as *Bryan* remains good law,[26] it stands for the proposi-

---

"technical" element of the crime charged, from cases involving a failure to prove truly essential elements of the crime charged.

Although the distinction makes some sense as a policy matter, it is not one that we have the power to draw. As a court, we must take the applicable criminal law as we find it, for we have no inherent power to criminalize conduct not legislatively proscribed. Moreover, we have no business secondguessing the policy judgments of the Indiana legislature embodied in its definition of the crime of prostitution. Accordingly, we must give the same significance to the State's failure to prove Sumpter a female—no matter how "unwise" or "technical" we believe that requirement of proof as a basis for criminal liability—that we would to the State's failure to prove any other element of the crime explicitly set out in the statute.

Simply put, considerations of comity and due deference to the proper limits of our judicial office mandate that we not pick and choose what legislatively prescribed elements of a crime be deemed matters of essential proof, as opposed to a "legal technicality" we may disregard if necessary to serve our own sense of justice.

**24.** *United States v. Ewell*, 383 U.S. 116, 121, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966).

**25.** *United States v. Tateo*, 337 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964).

**26.** *Bryan*'s precedential underpinnings are suspect, for it relies on pure dictum from *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 449, 462, 67 S.Ct. 374, 91 L.Ed. 422 (1947), and on *Trono v. United States*, 199 U.S. 521, 533–34, 26 S.Ct. 121, 50 L.Ed. 292 (1905), a case now effectively overruled by *Green v. United States*, 355 U.S. 184, 191–92, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), which dismisses the presumptive-waiver theory underlying *Bryan* as "wholly fictional." The Court's treatment of the complex double jeopardy issue before it in *Bryan* was both cursory and conclusory, and even the Court's apparent reaffirmation of *Bryan* by way of dicta in *Forman v. United States*, 361 U.S. 416, 426, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960), and by way of citation in *United States v. Tateo*, 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964), might now be taken with a grain of salt because both cases predate *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), which incorporates the double jeopardy clause into the due process clause of the Fourteenth Amendment. Since *Benton*, the Court has not even cited *Bryan*. The Court has, however, aggressively extended the reach of double jeopardy principles in recent years. E. g., *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975); *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). Accordingly, extension of post-*Bryan* doctrinal developments that call *Bryan*'s continued validity into question might be anticipated.

For example, mistrial cases such as *Jorn, supra* at 486, 91 S.Ct. 547, *Downum v. United States*, 372 U.S. 734, 737–38, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), and *Gori v. United States*, 367 U.S. 364, 369, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961), establish that the prosecution can be estopped by its own lack of preparedness or negligence from vindicating its interest in trying persons accused of crime. If the prosecution's own carelessness can bar it from taking the issue of the defendant's guilt to the jury even once, why should the prosecution be allowed to *re*litigate that issue after overlooking the need to prove an essential element of its case at trial? Surely there is no difference in principle between retrying defendants whose convictions have been reversed for want of sufficient supporting evidence and the practice condemned in *Jorn* and *Gori* of providing the prosecution with "another, more favorable opportunity to convict" after a trial "in which its case [went] badly." 400 U.S. at 489, 91 S.Ct. at 559; 367 U.S. at 369, 81 S.Ct. 1523.

The government-appeal cases such as *United States v. Jenkins*, 420 U.S. 358, 370, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975), *United States v. Wilson*, 420 U.S. 332, 343–53, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), and *United States v. Sisson*, 339 U.S. 267, 288, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970), also lend support for reconsidering *Bryan*. Their rationales—bottomed on the significant distinctions between reversing rulings of law that, if erroneous, can be corrected without relitigating the facts—suggest a basis for overruling *Bryan* without calling *Ball* itself into serious question. See note 20 *supra*.

At least in cases such as *Bryan*, where the accused was entitled to a directed acquittal at trial, there is reason to apply the double jeopardy bar "against a second prosecution for the same offense after acquittal," *United States v. Wilson, supra* 420 U.S. at 343, 95 S.Ct. at 1021, that does not exist in cases such as *Ball*.

tion that the principles underlying the *Ball* rule retain some vitality even when a conviction has been reversed on appeal for want of sufficient supporting evidence. However, we need not decide here whether to follow other courts in anticipating *Bryan*'s demise,[27] for it does not dictate a result contrary to the one we reach here.

Unlike the *Bryan* defendant, Sumpter did not win a reversal of her conviction and a new trial at which the State was again put to its proper burden of proving beyond a reasonable doubt each of the essential facts constituting the crime charged. Rather, Sumpter's conviction was "affirmed in part" and her case remanded to a new factfinder solely to permit the State to retry an essential element of its case unproven and overlooked at trial. *Sumpter v. State*, 261 Ind. 471, 483, 306 N.E.2d 95, 104, *appeal dismissed*, 419 U.S. 811, 95 S.Ct. 25, 42 L.Ed.2d 38 (1974). Unlike the State, Sumpter was not given a comparable second chance to rehabilitate her defense to the State's proof of other elements of the crime. Accordingly, we believe the procedure used in this case failed to provide a fair accommodation of the "respective interests involved." *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 1788, 44 L.Ed.2d 346 (1975). In our view, the fairness principle underlying the *Wilson* Court's recent explanation of the *Ball* rule demands at least that a defendant be put on an equal footing with the prosecution when an appellate remand affords the latter a second chance to prove essential facts neglected at trial.[28]

**27.** Relying on *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), the Second Circuit, without even citing *Bryan*, has recently held that retrials following reversals relating, "not to a trial court error, but rather to a failure in the government's case," violate the double jeopardy clause. *United States v. Robinson*, 545 F.2d 301, 305 n.5 (2d Cir.1976).

Like the Second Circuit, the Third Circuit follows the *Ball* rule permitting retrial of defendants whose convictions are reversed for procedural errors of law but declines to apply it when "[r]eversals or mistrials [are] granted on the basis of insufficient evidence or any other assessment of the facts presented at trial." *United States v. DiSilvio*, 520 F.2d 247, 249 n.3 (3d Cir.1975). In that Circuit, the double jeopardy clause is assumed to bar reprosecution unless "there [was] sufficient evidence presented in the first trial to establish a prima facie case." *United States v. Alvarez*, 519 F.2d 1036, 1049 (3d Cir.1975).

A growing number of state courts have likewise held that retrials following reversals for insufficiency of the evidence are barred by the double jeopardy clause. *Hervey v. Colorado*, 178 Colo. 38, 495 P.2d 204, 208 (1972); *People v. Woodall*, 61 Ill.2d 60, 329 N.E.2d 203, 205–06 (1975); *People v. Brown*, 99 Ill.App.2d 281, 241 N.E.2d 653, 659–64 (1st Dist.1968); *State v. Moreno*, 69 N.M. 113, 364 P.2d 594, 595 (1969); see *State v. Torres*, 109 Ariz. 421, 510 P.2d 737, 738–39 (1973); *Danks v. State*, 229 A.2d 789, 791–92 (Del.1967); *Smith v. State*, 239 So.2d 284, 288–89 (Fla.App.1970), *rev'd*, Fla., 249 So.2d 16 (1971); *Sosa v. Maxwell*, 234 So.2d 690, 692 (Fla.App.1970).

Most federal courts have not yet gone so far as to repudiate *Bryan*. They have, however, strictly limited application of the *Bryan* rule to cases wherein the accused requested a new trial in the district court or on appeal. E. g.,

*Greene v. Massey*, 546 F.2d 51 (5th Cir.1977); *United States v. Diggs*, 527 F.2d 509, 513 (8th Cir.1975); *United States v. Howard*, 432 F.2d 1188 (9th Cir.1970); *United States v. Fusco*, 427 F.2d 361, 363 (7th Cir.1970); Wright, *supra* note 14, at 272. Moreover, under the statutory authority of 28 U.S.C. § 2106, they have established the practice of directing acquittals following reversals for insufficiency of the evidence. E. g., *Greene v. Massey, supra* at 56 n.16; *United States v. Wiley*, 170 U.S. App. D.C. 382, 517 F.2d 1212, 1215–21 (1975); *United States v. Dotson*, 440 F.2d 1224, 1225 (10th Cir.1971); *United States v. Howard, supra* at 1191; *United States v. Williams*, 348 F.2d 451 (4th Cir.1965), *cert. denied*, 384 U.S. 1022, 86 S.Ct. 1939, 16 L.Ed.2d 1024 (1966).

The commentators are also in agreement that *Bryan* deserves reconsideration in light of subsequent developments in the law of double jeopardy. See authorities cited in note 14 *supra.*

Indeed, even courts that continue to adhere to the practice of permitting retrial in a case such as *Bryan* acknowledge the "judicial tendency or trend towards recognition of the logic of appellate direction for the entry of judgment of acquittal if the state fails to prove its case in the trial court." *Gray v. State*, 254 Md. 385, 255 A.2d 5, 9 (1969), *cert. denied*, 397 U.S. 944, 90 S.Ct. 961, 25 L.Ed.2d 126 (1970).

**28.** Because Sumpter was not given a trial *de novo*, none of the other justifications advanced for the *Ball* rule would be of help to the State in this case. See note 14 *supra.*

Though the much-criticized "waiver" theory retains some vitality, it is premised on the view that the defendant received what was asked for on appeal. See *Forman v. United States*, 361 U.S. 416, 426, 80 S.Ct. 481, 4 L.Ed.2d 412

The State's argument that the remand imposed a "lesser burden" of reprosecution than would a full trial on the merits is unconvincing. "Jeopardy denotes risk." *Breed v. Jones, supra* at 1785. That only one element of the crime was put at issue on remand hardly minimized the risk of conviction and punishment, and the attendant "anxiety and insecurity . . . traditionally associated with a criminal [re]prosecution," that the double jeopardy clause was designed to prohibit. *Id.* at 1785–86. Moreover, had the Indiana Supreme Court reversed Sumpter's conviction outright and remanded the case for a trial *de novo*, Sumpter would have received at least the same opportunity to relitigate the weak aspects of her case that the State was given. Thus, rather than benefitting Sumpter, the limited remand at issue put her at a marked disadvantage vis-à-vis the State. We fail to see how this procedure was "fair to both the defendant and the Government." [29] *United States v. Wilson*, 420 U.S. 332, 343 n.11, 95 S.Ct. 1013, 1022, 43 L.Ed.2d 232 (1975).

Our view of the difference between the legal effect of the remand before us and the effect of an outright reversal followed by a new trial draws support from *United States v. Rosenbarger*, 536 F.2d 715, 721 (6th Cir.1976). Rosenbarger was charged with a three-count indictment of receiving and possessing three firearms in violation of 18 U.S.C. App. § 1202(a)(1). Upon conviction, he was ordered to serve 18-month concurrent sentences on the first two counts and an 18-month consecutive sentence on the third count. Faced with the question of whether one or three offenses were charged and proven, the Sixth Circuit held that only one offense under § 1202(a)(1) would be established unless the Government showed that the separate firearms were acquired and stored at different times or places. The evidence presented at trial, however, did not prove separate receipt and secretion of the weapons. Accordingly, the court affirmed the conviction on count one and vacated the judgment on the other two counts. Turning to the question of whether the Government could retry the defendant on the latter two counts, the court stated:

> "To allow the Government on remand to submit additional proof as to the separate receipt of the weapons would violate the prohibition against double jeopardy con-

(1960). Here, in contrast, Sumpter did not ask for the partial affirmance of her conviction and limited remand she received in lieu of the new trial that she sought.

The "clean-slate" theory is likewise inapposite because Sumpter's conviction was not nullified; her slate not wiped clean; her presumption of innocence not restored.

Finally, the "continuing jeopardy" theory has been laid to rest by the Supreme Court's recent repudiation thereof.

**29.** To be sure, *Wilson's* fairness-to-the-defendant rationale for the *Ball* rule rests on the assumption that the rule "enhances the probability that appellate courts will be vigilant to strike down previous convictions . . . tainted with reversible error." *United States v. Ewell*, 383 U.S. 116, 121, 86 S.Ct. 773, 777, 15 L.Ed.2d 627 (1966). If the rule were otherwise, the Court fears that appellate courts would become less zealous in their protection of defendants' rights. *United States v. Tateo*, 337 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964).

Frankly, we are somewhat nonplussed that the Court would premise its fairness rationale on the fear that appellate judges sworn to uphold the Constitution might forsake their oaths of office because of personal convictions regarding a defendant's moral depravity or guilt. As the Court has itself noted, we are "not at liberty to grant or withhold the benefits . . . which the Constitution commands for all, merely as we may deem the defendant innocent or guilty." *Eubanks v. Louisiana*, 356 U.S. 584, 589, 78 S.Ct. 970, 974, 2 L.Ed.2d 991 (1958), quoting *Hill v. Texas*, 316 U.S. 400, 406, 62 S.Ct. 1159, 86 L.Ed. 1559 (1942).

But, even assuming *arguendo* that the Court's concern over the impact that evidence of guilt may have on our zealous regard for the rights of defendants is valid, we believe that *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), eviscerates the prophylactic purpose of the *Ball* rule noted in *Ewell* and *Tateo*. If we are inclined to balance evidence of guilt against the importance of a defendant's rights under the Constitution, *Chapman's* doctrine of harmless constitutional error provides us with a vehicle for doing so.

Thus, if, as *Wilson* says, the *Ball* rule exists because it is fair to the defendant, it must, post-*Chapman*, be so for reasons other than those expressed in *Tateo* and *Ewell*.

tained in the Constitution. The Government had its opportunity to try the defendant . . . ." *Id.* at 721.

We concur in the view of our colleagues on the Sixth Circuit. Because we deal here with a remand granted solely to permit the State to submit proof of an essential element of the crime charged lacking at trial, rather than with an outright reversal and trial *de novo* that put the prosecution and the accused on an equal footing on remand, we believe that *Ball* and *Bryan* are not controlling. We hold that the limited remand at issue here violated Sumpter's rights under the Fifth and Fourteenth Amendments by twice placing her in jeopardy for the same offense.[30]

Accordingly, we reverse the district court's dismissal of Sumpter's petition and remand the case with directions to issue a writ of habeas corpus ordering her immediate and unconditional release from custody.

REVERSED and REMANDED WITH DIRECTIONS.

---

**30.** In view of this holding, we need not reach the distinct due process and jury trial issues identified in *United States v. Alvarez*, 519 F.2d 1036, 1049–51 (3d Cir. 1975), that are intertwined with the double jeopardy problem created by the bifurcated trial procedure used in this case. See generally Note, *Due Process and Bifurcated Trials: A Double-Edged Sword*, 66 Nw.L.Rev. 327 (1971).